Julie Cavanaugh-Bill, Nevada Bar # 11533
CAVANAUGH-BILL LAW OFFICES. LLC
401 Railroad St., Ste. 307
Elko, Nevada 89801
(775) 753-4357
julie@cblawoffices.org

Roger Flynn, *Pro Hac Vice*
Jeffrey C. Parsons, *Pro Hac Vice*
WESTERN MINING ACTION PROJECT
P.O. Box 349, 440 Main St., #2
Lyons, CO 80540
(303) 823-5738
wmap@igc.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| GREAT BASIN RESOURCE WATCH; et al., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR; et al., <br><br> Defendants. <br><br> EUREKA MOLY, LLC, <br><br> Defendant-Intervenor. | Case No: 3:19-cv-00661-LRH-WGC <br><br> PLAINTIFFS' **REPLY** ON MOTION TO COMPLETE THE RECORD, (and IN THE ALTERNATIVE SUPPLEMENT THE RECORD) |

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... iii

INTRODUCTION ............................................................................................................................ 1

I.   **Plaintiffs' BLM Documents Belong in the Record**...................................................... 2

1.   *Exhibits 2-5 Were Before the Agency As They Were Submitted "As Part Of" GBRW's Comments* ........................................................................... 2

2.   *Exhibits 7-11 Were At Least "Indirectly Considered" by BLM, as They Were Part of BLM's NEPA Analysis* .................................................................... 4

3.   *BLM "Carefully Considered" EPA's Comments, Which Specifically Discussed and Referenced Exhibit 12, BLM's EA for the Nearby Oil and Gas Lease Sale*………………………… ............................................................................ 5

II.  **This Court Should Supplement the Record with Plaintiffs' Exhibits** ...................... 6

III. **This Court Can Take Judicial Notice of BLM's Documents** .................................. 10

IV.  **BLM Cannot Exclude Documents from Judicial Review Simply by Labeling Them "Deliberative"** ..................................................................................... 11

# TABLE OF AUTHORITIES
*Federal Caselaw*

American Wild Horse Preservation Campaign v. Salazar,
859 F.Supp.2d 33 (D.D.C. 2012) ...........................................................................................3

ASARCO, Inc. v. EPA,
516 F.2d 1153 (9th Cir. 1980) ..............................................................................................7

Black Warrior River-Keeper v. EPA,
2:19-cv-00344-JHE (S.D. Ala. 2019) ...................................................................................3

Bundorf v. Jewell,
142 F.Supp.3d 1138 (D. Nev. 2015) ..........................................................................6, 7, 8, 9

Center for Biol. Diversity v. Bernhardt,
2020 WL 1130365 (D. Mont. 2020) ...................................................................................12

Center for Biol. Diversity v. U.S. BLM,
2007 U.S. Dist. LEXIS (N.D. Cal. 2007) .............................................................................6

Center for Biol. Diversity v. U.S. Forest Service,
349 F.3d 1157 (9th Cir. 2003) ..............................................................................................5

Desert Survivors v. U.S. Dept. of Interior,
231 F.Supp.3d 368 (N.D. Cal. 2017) ..................................................................................12

F.T.C. v. Warner Comm's Inc.,
742 F.2d 1156 (9th Cir. 1984) ............................................................................................12

Great Basin Mine Watch v. Hankins,
456 F.3d 955 (9th Cir. 2006) ..............................................................................................10

Great Basin Resource Watch v. BLM,
844 F.3d 1095 (9th Cir. 1980) ..............................................................................................4

In re Thomas E. Price,
No. 17-71121 (9th Cir. 2018) .............................................................................................11

In re United States,
875 F.3d 1200 (9th Cir. 2017) .......................................................................................1, 11

Lands Council v. Powell,
395 F.3d 1019 (9th Cir. 2005) ..............................................................................................6

Maritel, Inc. v. Collins,
422 F.Supp.2d 188 (D.D.C. 2006) ..........................................................................................6

New Mexico ex rel Richardson v. BLM,
565 F.3d 683 (10th Cir. 2009) ............................................................................................11

Or. Natural Desert Ass'n v. BLM,
625 F.3d 1092 (9th Cir. 2008) ............................................................................................10

Portland Audubon Soc'y v. Endangered Species Comm.,
984 F.2d 1534 (9th Cir. 1993) ........................................................................................1, 12

Rybachek v. U.S. EPA,
904 F.2d 1276 (9th Cir. 1990) ............................................................................................10

Seattle Audubon Soc'y v. Espy,
998 F.2d 699 (9th Cir. 1993) ................................................................................................5

Sequoia Forestkeeper v. U.S. Forest Service,
2010 WL 2464857 (E.D. Cal. 2010) ..................................................................................3, 6

Sierra Club v. Zinke,
2018 WL 3126401 (N.D. Cal. 2018) ..................................................................................11

Thompson v. U.S. Dep't of Labor,
885 F.2d 551 (9th Cir. 1989) ....................................................................................4, 6, 12

Ursack, Inc. v. Sierra Interagency Black Bear Group,
2009 WL 2422784 (N.D. Cal. 2009) ............................................................................6, 7, 10

Washington v. U.S. Dept. of State,
2019 WL1254876 (W.D. Wash. 2019)................................................................................11

Wyoming v. U.S. Dept. of Interior,
2008 WL 11335191 (D. Wyo. 2008) ..................................................................................12

**INTRODUCTION**

Plaintiffs Great Basin Resource Watch, Western Shoshone Defense Project, and the Progressive Leadership Alliance of Nevada (collectively "GBRW") submit this Reply to the Federal Defendants/BLM's Response brief regarding GBRW's Motion to complete the Administrative Record ("AR"), or in the alternative, to either supplement the record with, or take judicial notice of, agency documents omitted from the AR.

BLM portrays GBRW's Motion as one that would "mire the Court in thousands of irrelevant documents," Fed. Resp. 4, and result in "an ungainly compilation" of additional documents. Fed. Resp. 3. Such hyperbole, however, is not supported by the facts. GBRW has provided a limited number of specific documents – BLM's own documents – that certainly are not "irrelevant," as they deal precisely with the issues in this case. They were either submitted by GBRW with its comments, or were considered directly or indirectly by BLM.[1]

It is not surprising why BLM wants to block this Court's consideration of the BLM documents, as they expressly contradict the assumptions contained in the challenged Record of Decision ("ROD") and Final Supplemental EIS ("FSEIS") for the Mt. Hope mine. Yet under controlling precedent, an agency cannot selectively refuse to include documents that undermine its position. The APA's obligation to provide a complete record is "imposed to ensure that agency action does not become effectively unreviewable, for '[i]f the record is not complete, then the requirement that the agency decision be supported by 'the record' becomes almost meaningless.'" *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993)." In re United States, 875 F.3d 1200, 1205 (9th Cir. 2017). An incomplete record – like the one produced in this case – must therefore "be viewed as a fictional account of the actual decisionmaking process." Portland Audubon Soc., 984 F.2d at 1548 (9th Cir. 1993).

---

[1] The documents are listed as Exhibits 2-13 attached to GBRW's Motion. BLM now agrees to supplement the record with Exhibit 6, GBRW's April 21, 2019 email which provided GBRW's comment letter and the dedicated computer link to Exhibits 2-5. Fed. Resp. n.3 (p. 6).

1

## I. **Plaintiffs' BLM Documents Belong in the Record**

1. *Exhibits 2-5 Were Before the Agency As They Were Submitted "As Part Of" GBRW's Comments*

BLM does not deny that GBRW provided BLM with a dedicated computer link to Exhibits 2-5 as part of GBRW's April 21, 2019 comments. Each of these are BLM Environmental Assessments ("EA"s) from other BLM offices which detail BLM's current policy of including reasonable estimates of air pollution emissions that are predicted to occur as a result of BLM-issued oil and gas leases. In contrast, in its review of the Mt. Hope mine, BLM failed to consider any air pollution emissions that may result from the 100+ oil and gas leases in the area.

BLM asserts, wrongly, that GBRW merely submitted general citations to internet websites for these documents, and that "consideration by citation" is not enough to include the documents in the record. Fed. Resp. 6. But that is not what happened. GBRW's comment email to BLM (Exhibit 6) attached the specific comment letter and provided a dedicated link to all of the documents (including Exhibits 2-5) that GBRW specifically referenced and discussed in its letter. In that email, GBRW notified BLM that: "**As part of our comments** are a number of supporting documents at the following download…." Exhibit 6 (emphasis added). BLM cannot ignore documents that are "part of our comments."

In the comment letter itself, GBRW relied on these Exhibits to show how BLM's decision not to include any air pollution estimate whatsoever from the oil and gas operations that would occur on the leases contradicted its national policy, as shown by the BLM EAs. GBRW stated:

> Further, recent BLM NEPA analysis for oil and gas leases include an estimate of potential air pollutant emissions from future exploration/development of these leases. *See* attached BLM EAs for leasing in Montana, South Dakota, North Dakota, and New Mexico. … Also, as noted by BLM in these other EAs, BLM is also capable of analyzing/estimating the indirect and cumulative impacts to water quantity/dewatering, water quality, and other resources resulting from activities on the leases (as well as actually measuring background levels of air pollutants in the area).

AR063996.

For both the comment letter and the dedicated link, all BLM had to do was click on its computer to access all of the documents. BLM clicked on GBRW's attached comment letter and

2

included that in the record, but for some reason BLM purportedly did not click on the link to access the other documents provided by GBRW. Nor did BLM bother to inform GBRW that it refused to access the linked documents. GBRW had no reason to believe that BLM would refuse to access the documents or that they would not be considered "as part of" the comments.

In fact, due to the size of the linked documents (totaling over 300 mB), GBRW could not merely attach them to its comment email. BLM acts as if it does not know how to access documents provided via a direct computer link. Yet, as GBRW noted in its Motion (at 11-12), the only way the public could access BLM's draft documents during the public comment period was through a similar dedicated computer link. The same is true, of course, for proceedings before all federal courts, as all documents are accessed via a computer link in the ECF system. In other words, BLM cannot plausibly claim that it was incapable of accessing the Exhibits.

BLM fails to rebut the basic rule that it "may not simply remain studiously ignorant of material scientific evidence well known to the agency and brought directly to its attention in timely-filed comments." American Wild Horse Preservation Campaign v. Salazar, 859 F. Supp. 2d 33, 43 (D.D.C. 2012). Nor does BLM attempt to rebut GBRW's reliance on a recent analogous decision in Black Warrior River-Keeper v. EPA, No. 2:19-cv-00344-JHE (S.D. Ala. 2019)(Exhibit 14), where the court rejected an agency's similar attempt to exclude documents that were provided via a dedicated computer link.

BLM relies heavily on Sequoia Forestkeeper v. U.S. Forest Service, 2010 WL2464857 (E.D. Cal. 2010). Fed. Resp. 6. But that case is easily distinguished, as there, the document in question was merely an internet citation and "was an *underlying source document* for information contained in a different, non-cited portion" of yet another document. Id. *6 (emphasis in original). Indeed, documents in the record in that case "*do not rely upon or even refer to information taken from* [the document plaintiffs wanted to include]." Id. (emphasis in original).

That is a far cry from the situation here, where both GRBW's April 21, 2019 email as well as its comment letter specifically discussed Exhibits 2-5 as evidence of BLM's contradicting policy across the West which estimates environmental impacts resulting from oil and gas leasing.

3

Nor did GBRW merely provide a general internet cite to these Exhibits, as GBRW provided a dedicated link directly to BLM. As such, they are properly in the record.

2. *Exhibits 7-11 Were At Least "Indirectly Considered" by BLM, as They Were Part of BLM's NEPA Analysis*

BLM also asserts that its NEPA analysis for the nearby Gold Bar and Prospect Mountain mines (Exhibits 7-11), were not considered when it prepared its air quality analysis for Mt. Hope. These documents were produced by the very same BLM office that reviewed/approved the Mt. Hope mine. "The 'whole' administrative record … consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." Thompson v. U.S. Dept. of Labor, 885 F.2d 551, 555 (9th Cir. 1989)(emphasis in original)(citations omitted).

The Ninth Circuit specifically faulted BLM in the original EIS for using "zero" as the baseline levels for Clean Air Act Criteria Pollutants existing and expected in the Mt. Hope area. Great Basin Resource Watch v. BLM, 844 F.3d 1095, 1101-1106 (9th Cir. 2016). In the challenged FSEIS, BLM nevertheless again set the baseline levels at zero, asserting that: "The emissions for this analysis were taken from the SEIS for the Ruby Hill Mine Expansion – East Archimedes Project (BLM 2005) and recent NEPA analyses completed for the Gold Bar Project and Prospect Mountain Mine Project." FSEIS at 36, AR066385.

But the "recent NEPA analyses **completed for** the Gold Bar Project and Prospect Mountain Mine Project" necessarily includes the **completed** Final EIS for the Gold Bar mine and the Final EA for the Prospect Mountain mine (along with the completed approval decisions such as the ROD for Gold Bar and the Decision Record for Prospect Mountain).

The reason why BLM tried to exclude these documents from the record is obvious, as the FEIS and EA for these mines used significantly higher baseline numbers for air pollutants in the Mt. Hope area. Motion at 14-15. Instead of including the "recent NEPA analysis completed" for these mines in the record, BLM included in the record only a consultant's 2017 air quality report, which used the "zero" baseline level. Notably, that report predated the "completed" NEPA

4

analysis for both of these mines (by two years in the case of the 2019 EA for Prospect Mountain).

BLM admits that, despite its statement that it relied on the "completed" NEPA analysis for the two mines, it actually "considered only the emissions data" from the 2017 air report, not the completed analysis. Fed. Resp. 8. But BLM cannot avoid the fact that "NEPA analysis" is not just data, but the actual analysis of the data contained in the EIS/EA for these mines. This Court should reject BLM's cherry-picking of documents to support its desired conclusion at Mt. Hope.

3.  *BLM "Carefully Considered" EPA's Comments, Which Specifically Discussed and Referenced Exhibit 12, BLM's EA for the Nearby Oil and Gas Lease Sale*

Regarding BLM's EA analyzing the environmental impacts expected from its latest round of oil and gas leasing around Mt. Hope, BLM admitted that it "carefully considered" EPA's comments on the FSEIS. BLM ROD at 8, AR066817. Those comments expressly highlighted how BLM's 2019 Lease Sale EA (Exhibit 12) directly contradicted the Mt. Hope FSEIS' conclusions regarding the cumulative impacts from the leasing on air quality and water resources (due to the significant water usage required by the expected oil and gas operations). *See* GBRW Motion at 7-8 (detailing EPA's analysis and reliance on the 2019 Lease Sale EA).

Despite "carefully considering" EPA's comments, BLM now asserts that it never saw its own Lease Sale EA which EPA discussed at length. BLM argues that including its Lease Sale EA in the record "stretches the chain of indirect causation to its breaking point." Fed. Resp. 7. This begs the obvious question of how could BLM "carefully consider" EPA's comments on the air and water issues related to the Lease Sale EA and the FSEIS for Mt. Hope when it purportedly never looked at the document discussed by EPA – the document produced by the very same BLM office a few months earlier?[2]

BLM argues that its Lease Sale EA should only be included in the record if it was "*heavily* relied upon in the agency's final decision." Fed. Resp. 7 (emphasis by BLM). But that is not the

---

[2] The agency is required by NEPA to fully respond to all comments. *See* Cntr. For Biol. Div. v. U.S. Forest Service, 349 F.3d 1157, 1167 (9th Cir. 2003); Seattle Audubon Soc'y v. Espy, 998 F.2d 699, 704 (9th Cir. 1993)(agency required to address the criticisms disputing evidence upon which the EIS's management strategy rested); 40 C.F.R. §1502.9(b)("Final environmental impact statements shall respond to comments….").

5

standard for inclusion of documents in the record. The administrative record is "not necessarily those documents that the **agency** has compiled and submitted as 'the' administrative record." Thompson, 885 F.2d at 555 (emphasis in original). Rather, "[t]he 'whole' administrative record … consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." Id.

As the court in Sequoia correctly held: "[T]he agency may not exclude information from the AR simply because it did not 'rely' on the excluded information in its final decision." 2010 WL2464857, at *3, *quoting* Maritel, Inc. v. Collins, 422 F.Supp.2d 188, 196 (D.D.C. 2006). In one of the cases analyzed in Sequoia, Cntr. for Biol. Div. v. U.S. BLM, 2007 U.S. Dist. LEXIS (N.D.Cal.2007), "the issue was not whether BLM actually 'relied' on the Box data. The court noted that because the Box data was developed by BLM (and thus, known to it) and it related directly to the issue in question, it was 'before' the agency 'at least indirectly.' Id. at *14–15. Thus, the court determined that it should be part of the record. Id." Sequoia,*5.

Here, there is no credible argument that the same BLM official that analyzed/approved the Mt. Hope FSEIS/ROD was unaware of the 2019 Lease Sale EA which he issued a few months earlier, especially when EPA highlighted that EA in its comments to BLM on Mt. Hope.

II. **This Court Should Supplement the Record with Plaintiffs' Exhibits**

Even if the Exhibits are not included in the record itself, this Court has broad authority to supplement the record "to help the court understand whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary not capricious." Bundorf v. Jewell, 142 F.Supp.3d 1138, 1145 (D. Nev. 2015)(internal quotations omitted). The parties agree that this Court may supplement the record with documents to determine "whether the agency has considered all relevant factors and has explained its decision," and/or are "necessary to explain technical terms or complex subject matter." Lands Council v. Powell, 395 F.3d 1019, 1030 (9th Cir. 2005). As Chief Judge Du held, the record may be supplemented "to identify and plug holes in the administrative record." Bundorf, at 1145. The record may be supplemented "to determine whether an agency's 'course of inquiry was insufficient or inadequate.'" Ursack, Inc. v. Sierra

6

Interagency Black Bear Group, 2009 WL2422784, *6 (N.D. Cal. 2009)(citations omitted).

Contrary to BLM, the agency documents are not "thousands of pages of superfluous technical analysis … that are unnecessary to explain BLM's 2019 Mt. Hope Decision." Fed. Resp. 12. They do not "obfuscate[] the existing record," Id. The BLM documents do not "add to the confusion to the determination of BLM's analysis for Mt. Hope." Id.

Rather, they are BLM's own documents that directly contradict the agency's cursory review of the baseline air quality situation around Mt. Hope, and the expected cumulative impacts from recent oil and gas leasing on air pollution and critical and scarce water supplies in the area.

BLM asserts that because the FSEIS discussed air quality issues and "explained its decision," this Court may not supplement the record with the other BLM documents that contradict those explanations. Fed. Resp. 11. Contrary to BLM, the fact that the challenged FSEIS sets the baseline levels of air pollution ("zero" according to BLM), and assumed that operations conducted on the 100+ oil and gas leases surrounding Mt. Hope will have absolutely no potential cumulative impacts to air and water resources, does not mean that this Court may not "identify and plug holes in the administrative record." Bundorf, at 1145.

Judge Du allowed extra-record evidence "to point out factors that are missing from Federal Defendants' wildlife analysis." Id. at 1146. The court "cannot adequately discharge its duty to engage in a 'substantial inquiry' if it is required to take the agency's word that it considered relevant matters." ASARCO, Inc. v. EPA, 516 F.2d 1153, 1160 (9th Cir. 1980). "[I]t is both unrealistic and unwise to 'straightjacket' the reviewing court with the administrative record. It will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not." Id.

That is the situation here, as GBRW's Exhibits all deal directly with "factors that are missing from" BLM's analysis. Bundorf, at 1145. Exhibits 2-5 and 12 are recent BLM EAs that analyze the extent of air pollution emissions that can be expected from a standard oil and gas lease on public land. Each EA predicts significant emissions from each lease. *See* Exhibits 2-5 (EAs

7

from other BLM offices), and Exhibit 12 (EA issued by the same Battle Mountain office highlighted and discussed in EPA's comments). Yet, in the Mt. Hope FSEIS, BLM simply says, with little discussion, that operations on the 100+ oil and gas leases will have absolutely zero potential emissions, and indeed no environmental impacts at all. As Bundorf explains, the court should supplement the record with such evidence when "it is not clear whether Federal Defendants considered the long-term effects" of the project on affected resources. 142 F.Supp.3d at 1146.

The BLM EAs at issue here all detail the agency's analysis and prediction of impacts resulting from oil and gas leasing. For example, as noted above and in GBRW's Motion, the Exhibits highlight the contradictions between the Mt. Hope FSEIS's conclusion that there can be no cumulative impacts to water and air from the oil and gas operations when the BLM EAs all determine that there **will be** impacts. Extra-record evidence is allowed to show the "unexplained inconsistencies" between the challenged decision and the facts. Bundorf at 1146.

The EPA specifically notified BLM that the 2019 Lease Sale EA (Exhibit 12) exposed the shortcomings of the Mt. Hope FSEIS. "EPA recommends the ROD [for Mt. Hope] disclose and discuss the significance of these cumulative aquatic resource effects and what restrictions, buffers, engineering controls or other mitigations would be most appropriate to protect scarce water resources." EPA letter at 2, AR066757. Yet BLM never conducted this review, instead acting as if the scientific findings in the Lease Sale EA did not exist. The agency's failure to consider mitigation measures (like those noted by EPA) was one of the grounds Judge Du relied on to order the record supplementation in Bundorf, at 1147.

Notably, the extra-record evidence allowed in Bundorf was a newly-created outside expert declaration submitted by plaintiffs. Here, all of the documents provided by GBRW are BLM's own documents – and in the case of the 2019 Lease Sale EA (Exhibit 12) and the completed NEPA analysis for the Gold Bar and Prospect Mountain mines (Exhibits 7 and 9), from the very same BLM office that reviewed/approved the Mt. Hope mine.[3] These Exhibits thus all provide

---

[3] BLM also challenges GBRW's request to include/supplement the record with BLM's approval documents for the 2019 Lease Sale and the Gold Bar and Prospect Mountain mines (Exhibits 8, 10, 13). At a minimum, those approval documents show BLM's support for the analysis contained

8

evidence that BLM failed to consider critical "relevant factors," warranting supplementation of the record in this case.

This Court should also supplement the record to consider evidence "as background information on complex issues." Bundorf, at 1147. BLM acknowledges that this Court may supplement the record "to explain technical concepts to the court." Fed. Resp. 13. That is clearly the case here, as the BLM leasing EAs, and the FEIS and EA for the Gold Bar and Prospect Mountain mines, each provide clarity as to the expected environmental impacts from operations conducted under those agency approvals. The expected impacts to air and water resources from mining projects and from operations conducted on oil and gas leases in the area of the proposed Mt. Hope mine are certainly complex and require technical analysis.

The detailed analysis of these impacts was actually performed in the BLM EAs and EIS that are the Exhibits to GBRW's Motion, rather than the cursory review contained in the FSEIS – documents that highlight the internal inconsistencies between the challenged FSEIS and all these other BLM documents. For example, the oil and gas leasing EAs each analyze the complex science behind expected air pollution from a representative oil and gas operation, factors completely lacking in BLM's review of the cumulative impacts from oil and gas operations in the FSEIS. *See, e.g.,* Exhibit 12 (2019 Lease Sale EA), stating that due to this complexity, "The BLM National Operations Center retained the Kleinfelder Team to prepare an emissions inventory estimate of criteria pollutants, GHG [GreenHouse Gases], and key HAPs [Hazardous Air Pollutants] for a representative oil and gas well in the western United States (Erbes 2013), designed to be used by BLM staff to evaluate emissions from small oil and gas projects…. Defining a 'representative' oil and gas well for the western US was challenging as there are many variables." 2019 Lease EA at 22. None of this "challenging" analysis was considered by BLM at Mt. Hope. BLM simply stated that there was no potential impacts from the oil and gas operations.

---

in those EAs and EISs – analysis that directly contradicts the conclusions in the Mt. Hope FSEIS and ROD.

9

Overall, BLM cannot hide from its own technical analysis, contained in the oil and gas EAs from other offices and from the same BLM office, and in the EIS (for the Gold Bar mine) and EA (for the Prospect Mountain mine) also issued by this same office.

### III.  This Court Can Take Judicial Notice of BLM's Documents

BLM does not attempt to argue that GBRW's Exhibits, which are BLM's own documents, many produced by the very same BLM office, are not accurate or are subject to reasonable dispute. Rather, they rely on cases where parties attempted to submit non-government documents from other entities (Rybachek v. U.S. EPA, 904 F.2d 1276, 1296 n. 25 (9th Cir. 1990)) or from a state agency that did not "have any relevance to a NEPA analysis" that was at issue in Great Basin Mine Watch v. Hankins, 456 F.3d 955, 976 (9th Cir. 2006). In Great Basin, a case challenging BLM's approval of a mine, the court did not take judicial notice of a state agency document because it "did not assist in understanding either the subject matter of this case or BLM's decision." Id.

That is not the situation here, as the BLM documents go directly to the subject matter of this case and BLM's decisions. As explained above and in GBRW's Motion, these documents directly contradict BLM's assumptions regarding baseline air quality levels, and the predicted cumulative impacts to water and air from operations on the oil and gas leases and mining operations near Mt. Hope.

The Ninth Circuit has recognized the appropriateness of taking judicial notice of BLM documents that assist the court analyzing BLM actions in a specific case. "The 2005 Handbook, along with the BLM briefs in other courts that we cite later in this opinion are not in the record. We take judicial notice of these public documents. See Fed.R.Evid. 201(b)(2)." Or. Natural Desert Ass'n v. Bureau of Land Mgmt., 625 F.3d 1092, 1112 n.14 (9th Cir. 2008)(judicial notice of BLM documents to determine if they show a divergence of BLM actions/policy compared to actions taken in case under review). See also Ursack, Inc. v. Sierra Interagency Black Bear Group, 2009 WL2422784, *6 (N.D. Cal. 2009)(taking judicial notice of documents on agency website "which provide relevant background information that may shed light on the context of [the agency's]

10

decision."); New Mexico ex rel. Richardson v. BLM, 565 F.3d 683, 702 n. 22 (10th Cir. 2009) (taking judicial notice of data on web sites of federal agencies).

### IV. BLM Cannot Exclude Documents from Judicial Review Simply by Labeling Them "Deliberative"

BLM argues that because it has labeled an unknown number of agency documents as "deliberative," there is no way for this Court or the parties to ascertain whether these documents are truly "deliberative" and what role they played in BLM's decision-making. The agency also refuses to provide a privilege log for the documents it asserts are covered by its claimed privilege, further hamstringing judicial review of agency action.

GBRW acknowledges that some courts have held that truly deliberative documents may not be part of the record. The recent decisions that have analyzed this issue in detail, though, hold that the agency cannot escape its duty to produce the "whole record" by such tactics.

> The Ninth Circuit has noted, however, that 'many district courts within this circuit have required a privilege log and in camera analysis of assertedly deliberative materials in APA cases.' *In re United States*, 875 F.3d 1200, 1210 (9th Cir. [2017]). ... The Court agrees with the other judges of this district. The deliberative process privilege protects only certain types of documents and, as with all privileges, the burden of proving its applicability lies with the party seeking to avoid production. **An agency may not simply declare that it has withheld privileged documents without disclosing their existence, identifying the privilege asserted, or providing plaintiffs and the Court with enough information to test the assertion.**

Washington v. U.S. Dept. of State, 2019 WL1254876, *2 (W.D. Wash. 2019)(other citations omitted)(emphasis added).

> The current Department of Justice position is contrary to the law in this Circuit, as the host of cases cited by Citizen Groups point out. In two cases decided since the latest Department of Justice memorandum, the Ninth Circuit did not overturn the district court's order requiring all materials directly and indirectly considered by the agency in the administrative record. *See In re Thomas E. Price*, No. 17-71121 (9th Cir. Jan. 26, 2018) (denying writ of mandamus after a court order requiring decisional documents and a privilege log); *see also In re United States*, 875 F.3d. 1200, 1208 (9th Cir. 2017), *vacated on other grounds by In re United States*, 138 S.Ct. 443, 445 (2017).

Sierra Club v. Zinke, 2018 WL 3126401, *3 (N.D. Cal. 2018). "If this Court were to adopt such reasoning, an agency would be free to unilaterally determine which documents should be included in the administrative record and which should not. This process would prevent any court review of

11

the agency's decision to omit certain records, and would leave parties, such as Petitioners, with no legal recourse." <u>Wyoming v. U.S. Dept. of Interior</u>, 2008 WL11335191 (D. Wyo. 2008).

This reflects the evolving line of cases within this Circuit which increasingly find that, at a minimum, the agency must produce a privilege log so that this Court may determine if the asserted "deliberative" documents meet the test for excluding them from the record.

> [T]he Court is convinced that the better view is that the "whole record" includes deliberative materials that were "directly or indirectly considered by agency decision-makers." *Thompson*, 885 F.2d at 555. When tasked with review of an agency decision under the APA, it is essential that the Court understand the agency's reasons for its decision. This includes the agency's stated reasons but may also include draft or deliberative documents exchanged in the course of reaching a decision.

<u>Cntr. for Biol. Div. v. Bernhardt</u>, 2020 WL1130365, *3 (D. Mont. 2020). "This is not to say that deliberative documents must always be included. The agency may protect such documents by asserting the qualified deliberative process privilege but must produce a privilege log to do so." <u>Id</u>.

"[U]nder some circumstances, predecisional deliberative communications may go to the heart of the question of whether an agency action was arbitrary and capricious, an abuse of discretion or otherwise inconsistent with the law[.]" <u>Desert Survivors v. U.S. Dept. of the Interior,</u> 231 F. Supp. 3d 368, 382 (N.D. Cal. 2017). "[A]n administrative record that fails to include such communication amounts to a 'fictional account of the actual decisionmaking process.' *Portland Audubon Soc.* at 154[8]." <u>Bernhardt</u>, 2020 WL1130365, *3.

GBRW does not ask that truly deliberative documents be included in the record. Yet that privilege is not absolute, and a district court has ample authority to gauge the correctness of the reasoning behind the excluded document, or portions thereof. For example, it is undisputed that factual material is not considered deliberative. <u>F.T.C. v. Warner Comms' Inc.</u>, 742 F.2d 1156, 1161 (9th Cir. 1984). But under BLM's view, this Court and Plaintiffs will never know.

GBRW respectfully requests that this Court reject BLM's blanket assertion that it can exclude any document that it unilaterally labels "deliberative," with no judicial check whatsoever.

Respectfully submitted this 23rd day of November, 2020.

*/s/ Roger Flynn*
Roger Flynn, (Colo. Bar # 21078), *Pro Hac Vice*
Jeffrey C. Parsons, (Colo. Bar # 30210), *Pro Hac Vice*
WESTERN MINING ACTION PROJECT
P.O. Box 349, 440 Main St., #2
Lyons, CO 80540
(303) 823-5738
wmap@igc.org

Julie Cavanaugh-Bill, Nevada Bar # 11533
CAVANAUGH-BILL LAW OFFICES, LLC
401 Railroad St., Ste. 307
Elko, Nevada 89801
(775) 753-4357
julie@cblawoffices.org

Attorneys for Plaintiffs

## Certificate of Service

I, Roger Flynn, hereby certify that I submitted the foregoing to all parties, via this Court's ECF filing system, this 23rd day of November, 2020.

*/s/ Roger Flynn*